2014, 1612, and 1655, Mr. Dunner, when you are ready. If you were there, we've lost sight of you. My apologies for the delay. Good morning, and may it please the Court. The infringement issues in this case are essentially factual, and so the question is, is there substantial evidence, was there substantial evidence in the case to support ParkVision's infringement position and the jury's verdict in its favor? The question is not whether or not Qualcomm can find snippets of evidence to support its position. I'll do my best to show that there was substantial evidence, and moreover, I will do my best to show that the district court's infringement decision was based on basically a misunderstanding of the technology in this case. Let me deal first with the generating limitation. Both sides agree. We don't agree on a lot of things, but we do agree on one thing. Before you get into the merits of that argument, could I get a couple of things clarified in my own mind as to where the parties are in this? First of all, I take it that no one disputes that the Qualcomm accused devices are current-mode devices, not voltage-mode devices, and that the patent, well, the patent is very broad, but in any event, the specification is a voltage mode. Is that fair to say? I don't think that... As to the Qualcomm, all the accused devices are current-mode devices, correct? I think both parties, I think Razavi, their expert, said that the baseband is created by voltage across the capacitor, so... Well, he was talking about the Parker Vision invention. He wasn't talking about the Qualcomm accused devices. He was talking about the baseband signal is based on the measurement of voltage across the capacitor. In the Parker Vision, he's talking about validity, and there he's talking about the Parker Vision device. So why is it... Well, let me make sure that we're on the same page here. The Qualcomm... Initially, Qualcomm's devices that were accused included both voltage-mode and current-mode devices. As I read the record, the ultimate decision was to strike all of the voltage-mode devices and go only with current-mode devices. Is that your understanding? Your Honor, my understanding is that it's all based on voltage. There obviously is a current. Power is a function of voltage and current. Razavi, at page 11189, was asked, how is the baseband signal measured? He said the baseband signal is measured as a voltage across the capacitor. I think that applies to the accused devices. It applies generally, and our position... I know they've taken the position that theirs is a current-mode device and therefore it does not infringe, but I have to disagree with you, Your Honor, on that point. You mean you think that the accused devices are not limited to current-mode devices? That's exactly right. Okay. So, both parties agree that the issue on generating means is whether Qualcomm's products generate a baseband signal from energy stored in the capacitors. There is testimony by Dr. Prusnow, Parker Vision's expert, and I'm reading from 11057. It's very short. The energy from the carrier signal is transferred through the switch, it's accumulated by the capacitor, and that energy is then used to generate the baseband signal following the capacitor. I submit that that alone is substantial evidence that should have ended the inquiry. What page was that again? I missed the page number. 11057. And that should have been enough, and I submit is enough, but the district court held that because Dr. Prusnow made a concession, it wasn't enough. And what was the concession? In the district court's words on A27, that the baseband was created prior to the storage capacitor, and therefore the baseband signal could not have been generated from energy stored in the capacitors. There are two problems with that holding. One is, it's a mischaracterization of Dr. Prusnow's testimony, and secondly, he made no such concession, and secondly, the district court's position is inconsistent with the evidence that actually comes from Qualcomm's files. And let me deal with that evidence, which is really kind of critical. If you look at the yellow brief, pages 7 and 8, you will see three schematics. And the first schematic on page 7 is a high-level schematic, and the next two are lower-level schematics. It's sort of like a map with a country and a state and a city and then a neighborhood. I'm sorry, what page? I'm sorry, what page? Yellow, 7 and 8. 7 and 8, okay, thank you. And so, at 7, you will see the high-level schematic, and it shows a passive mixer on the left, a TX filter on the right, and the energy signal is coming in from the left. The second schematic, which is a lower-level schematic, at the top of page 8, is a picture, a schematic showing the mixer, Mix IQ. And right below it is something called W Mixer IQ Split. And Dr. Proust now said that the lower-level mixer, the one with the 1, 2, and the 3 on it, is the mixer's internal circuitry. Everything in that lower level is inside of the box, was his words. And Qualcomm disputes that, right? Qualcomm disputes that. And they dispute it because if you look at A1330, which is the JMOL picture of this 1, 2, 3 drawing, it's labeled at the top, 1 is the mixer, 2 is the baseband, and 3 are the capacitors. But Dr. Proust now said everything in this picture is in the mixer. Everything. And it's labeled W Mixer. So, their argument is that because the baseband signal is under 2, therefore, it was generated before the capacitor, which is inconsistent with our position, if that were correct. Well, it's inconsistent with your position, but why isn't it necessarily the case that, at least assume for a moment that we're talking about current-mode mixers, why is it not the case that if the baseband is created and is present on the circuit at BPOP and BPOM, number 2 in that diagram, that that necessarily means that the baseband is not being generated by the capacitors? Excuse me. Because Dr. Razavi said, Dr. Razavi said at 1, 1, 3, 2, 0 that the baseband signal is observed at every point along the wire, since all points along the wire are one and the same point. This is generated instantaneously across the entire wire. The showing of the baseband signals under 2... Mr. Dunner, your side didn't bring up this theory, though, of infringement below at trial, right? Your Honor, what we did bring up was we brought up the position that Dr. Prusnow said that the baseband signal is generated by the capacitors and that the location shown in these drawings was not inconsistent with that. I thought Dr. Prusnow was really focused on the capacitors relating to the TX filter. And then maybe in very, very quick passing made reference to these two or maybe four capacitors related to the mixer. Maybe it's inside the mixer, maybe it's outside the mixer. Is that a fair characterization of what happened below and what was really Parker Vision's infringement theory? That's a fair characterization of what the district court concluded and it's a fair characterization of what Qualcomm is arguing, but it's not a fair characterization of what happened below. Okay, so where did Parker Vision come forward with evidence or testimony about this one point on the line is the same as every other point on the line? Your Honor, the point I was going to make, I apologize, I didn't finish it, is that Dr. Prusnow made the point that the capacitors generate the baseband signal and that that was consistent with the argument about location of the baseband signal. And the case law says, Supreme Court case law, that you can add additional arguments in support of an argument you made below. I'm saying the argument was made below that the location of the baseband signal is compatible with the capacitors generating the baseband signal and this is another argument reinforcing that point. Now, when you raised Dr. Razavi's testimony on 11320, you were raising that in support, as I understand it, of the argument that he was testifying as to the accused device and saying that every point is the same as every other point on the circuit, right? Because I'm reading Razavi's testimony as being directed to the Weisskopf prior art as part of the invalidity case. He specifically addresses Weisskopf. He's not talking about the accused device at that point. So, I don't see why Razavi helps you. It came up in the context of Weisskopf, but it was a general statement. It was not restricted to only Weisskopf. It is a fact that when the baseband signal is generated, it is generated instantaneously across the entire wire. Voltage, but not the current. Right? I mean, it's a matter of electrical... That's correct. Okay, so if this is a current-based system, a current-mode system, then that proposition doesn't apply, right? Your Honor, I don't know when you say a current-mode system excludes the concept of voltage creating the baseband signal. I don't know that something being called a current-mode system, there is voltage and there's current. And when the carrier signal is generated and goes through the switches and into the capacitor, there is a voltage element and there's a current element. And the power is a function of both voltage and current. Right, but if the signal, if the baseband signal is being expressed in terms of current as opposed to variations in voltage, it would seem to me that the voltage and the proposition that all voltage on the circuit is the same ceases to have significance. That's my problem with your argument about the nature of Dr. Razavi's testimony and the other testimony about the voltage-mode devices as applied to what looks to be current-mode devices in the accused system. Your Honor, my answer to you would be that the voltage plays a role in this system. The baseband signal is created, is measured through voltage across the capacitor. And to call it a current-mode system does not exclude what I am suggesting is the case here. I know that Qualcomm disagrees with us on that point, but that is our position. Well, now, Dr. Prooknow, if that's the right pronunciation, testified that the capacitor did not affect the baseband current. The capacitor affected the high-frequency current. That's why it's a low-pass filter. And why is that not inconsistent with what you just said, that the voltage, the signal, is determined by the voltage across the capacitor? Your Honor, I apologize. I was reading it now. Could you please repeat that? Sure. Dr. Prooknow said that the way the capacitor works with a high-frequency and a low-frequency signal is that, in effect, the capacitor serves as if it has a closed switch for the high-frequency signal and an open switch for the low-frequency signal. In effect, the capacitor is blind to the low-frequency signal, which is why the TX filter works the way it does. But why is that not... Why does that not answer the question as to whether the baseband is being generated by the capacitor in the negative? I have two comments to make with respect to that. First of all, there are multiple capacitors. There are capacitors in the mixer, and there are capacitors in the TX filter. And each one generates... Each one contributes to the baseband signal. The first one that contributes is the capacitor in the mixer. It does so... It would do so even alone, even independently of the TX filter. And a note that was passed up to me say, the parties were focused on energy in the accused products, not the current. Both parties agreed that the energy is related to voltage, and I have sites A2443 and 2433. But didn't Dr. Prisnal also point to this BBOP and BBOM as being the baseband signal? He did, Your Honor. But the answer is that since everything in this drawing is in the mixer, everything, this is just a schematic. I say Dr. Razavi's testimony is relevant to this point because that BBOP could have been drawn any place along this line. It could have been drawn... The capacitor is not after the mixer. Their argument is that the capacitor is after the mixer. The capacitor is in the mixer. But it was your infringement theory that this device, my Qualcomm, it's discharging energy from these capacitors. And that discharged energy generates a baseband signal. Is that right? That's correct. How does that work exactly? How do you take the... Why does the discharged energy necessarily result in a down-converted signal? Well, I can only tell you my understanding is that the carrier signal goes into a switch. When the switch is open, it doesn't go through. When it's closed, energy passes through the switch into the capacitor and it opens and closes in order to get a discontinuous signal which is the sampling concept. And then energy is discharged from the capacitor every time the switch is open. Energy discharges out of the capacitor. And that results in a lower frequency signal? That results in a lower frequency signal. Is there any introduction of a control signal that mixes with that incoming carrier signal in order to lower the frequency to the point where you have a baseband signal? The lower... The control signal operates the switches, opens and closes the switches in accordance with a certain time scheme. And when those... When the switch closes, energy flows through. Right, but I guess I'm just trying to understand how you get from a high frequency signal to a low frequency signal. I understand the prior art as relying on mixing the high frequency signal with some control low frequency signal to... The baseband signal is a lower frequency signal compared to the carrier signal. And it just happens... I don't think there's any disagreement that the lower signal... The district court asked the question, show me why the baseband signal going out is at a lower frequency than the baseband signal going in. That's not the issue. The issue is, is the baseband signal going out at a lower frequency than the carrier signal? I don't think there's any disagreement on that point. Right. As I understand the claimed invention, it doesn't rely on a second signal being mixed with the carrier signal in order to produce a baseband signal. It seems like this Qualcomm mixer is necessarily mixing the carrier signal with some lower frequency signal to ultimately produce the baseband signal. Your Honor, I think it's doing exactly what the patent calls for. It is injecting a carrier high frequency signal. It uses switches. They open and close. And when it's closed, the energy flows through. When it's open, it discharges. I don't think it's doing anything different. Is it fair to say that just looking at this circuit diagram, it doesn't look any different in any meaningful way from figures 78A and 78B of the patent which show the prior art design? Just looking at the schematics. There's a switch. There's a sampling signal. There's a capacitor. As I understand it, everybody agrees that the structure is the same. It's just that what Parker Vision claims to have invented is new values at a lower impedance, a higher value for the capacitor, and a larger aperture for the switch. And that produced the invention, as I understand it. But if you look at the diagrams themselves, you see the same structure. It's just that the difference comes with the values. Isn't that a fair summary of the situation? I think you summarized it correctly. It's a lower impedance. It is a different... creating a discontinuous signal. So, if I understood your question correctly, that's basically correct. And that's what the accused structures do. Now, Judge Shen, you asked me a question, wasn't everything focused on the TX filter? And the answer is no because there's testimony the capacitors were in the mixer, and I cite 108, 03, and 04, and 107, 58, and 59. They're also in the TX filter, 11058, 11054. But the testimony was not about capacitors in the TX filter. That's what got the district court confused. There are capacitors in the TX filter. They contribute to the baseband signal. They augment the baseband signal, but they are not alone responsible for the baseband signal, which is a product of the capacitors coming out of the mixer initially. Mr. Donner, why don't we hear from Qualcomm, and we'll give you your three minutes of rebuttal time. All right. Mr. Teter. Thank you, Your Honor. May it please the court. Most of the argument we just heard this morning wasn't presented to the district court. Most of the arguments weren't presented at J-Mall, and most of the arguments weren't presented at trial. And I would direct the panel to the Sage v. Devin case from 1997 that says the new infringement arguments, new theories can't be introduced on appeal. They're citing a Supreme Court case that I think had to do with property disputes and takings. It has nothing to do with a patent case. Sage v. Devin, 1997, is the one you want to look at. You can't raise new infringement arguments and new infringement theories on appeal. What do the capacitors do in your mixer? There are no capacitors in the mixer. Okay, well, that's disputed. The capacitors are labeled number three on page eight of the yellow brief. Those capacitors are actually part of the TX filter, and I can go through Dr. Prusnall's testimony that shows exactly why that's the case. Well, what do they do? Those capacitors are there to attenuate the TX jammer. So you have a massive TX jammer signal, and that's created only because we're both transmitting and receiving at the same time in CDMA. Trying to filter out the high-frequency transmit. Exactly. There's a high-frequency transmit jammer, and that's what they're trying to get rid of. When the capacitors are open, in this case with the switches in effect closed to the high-frequency, but open, that is to say, shut to the low-frequency, right? And the low-frequency, in your theory, just goes flying right by. That is precisely correct, and that's how they're designed. So you can have a capacitor do two different things. You could use a capacitor as a sampler, like they do in their invention or their prior art Weisskopf, where you use that capacitor to generate a voltage baseband signal. You could do that. That's one thing you could do with a capacitor. Another different thing you can do with a capacitor is use it as part of a low-pass filter, and that's exactly what we do. So in the testimony that we cite in our brief, for example, Mr. Sorrell says, having a down converter followed by a filter, known since the antiquity. Dr. Prusnall testified that having a double-balanced mixer followed by just a low-pass filter, if it's just a low-pass filter, that's not infringing either. So to summarize this case in one sentence, I guess you would say that the difference between the Parker Vision invention and Qualcomm's accused devices is simply that, sure, Qualcomm uses capacitors, but they don't use capacitors to generate the baseband signal. That's precisely correct. End of discussion. That's precisely correct. Now tell me why, what's the evidence that shows, as you assert, that Qualcomm's devices are pure current-mode devices and not, as Mr. Dunner was arguing, dependent in part on voltage variation, as I understood his argument. That's a great question, and we cite a lot of that evidence on page 60, I believe, and 61 of our brief, indicating that our devices are current-mode devices, and all of the design documents we discussed describe, for example, A2308. This is cited on page 60 of our brief. The incoming RF signals are converted into current, and then the down-converted baseband current, describe what they're doing there. This argument, by the way, was not made at the district court. They never argued that our devices were voltage-mode devices. They dropped all the claims against voltage-mode devices, as we noted, I believe, footnote 23 of page 61, and they dropped all of those claims because those particular devices didn't have capacitors at all, didn't need them, because they didn't have the TX jammer problem. The only reason we have the capacitors in the TX filter is because we have the TX jammer. That's why we have them there. So if you look at... It means that you're doing, transmitting and receiving from the same device, and therefore you've got to get rid of the noise coming from the transmission. Absolutely correct. There's this massive TX jammer signal that comes around through, and that's what the TX filter, and all those capacitors are there to get rid of. So when you don't have that in the other devices that they drop the claims against... Before you go any further, I thought they were pointing to capacitors in the TX filter, and then they were pointing to an additional set of capacitors that, in their view, related to Qualcomm's mixer. So are you trying to say, no, every single capacitor that they're pointing to, whether it's on this side or that side of the TX filter box, they're all actually inside the TX filter? Yes, that's right. And this is a new argument they raised on appeal, and they flushed it out for the first time... Well, they were pointing to these very capacitors before. That's right. And Dr. Prusnall very clearly indicated, after looking at the schematics, that those capacitors are part of the TX filter. So he didn't say that the capacitors under 3 in the figure on... I think it's page 46 of our red brief. He never said that those capacitors are part of the mixer and not part of the TX filter. He, in fact, identified them as part of the TX filter. Where did he say that? It's right at A1080623-108072. And here's the question. He's just walked through all the schematics. So he's just walked through the schematic that we show on page 46 of our red brief. And here's the question. And this is on direct. Now, Dr. Prusnall, where in this figure... And now he's looking at the figure that shows the TX filter, the one they have on A7. Having gone through the schematics, he's asked, where in this figure are the energy storage devices that you showed us with respect to the schematic pages? Schematic pages refers back to what we see on page 46. Answer, the energy storage devices follow the mixers, and they're inside this box labeled TX filter, that box labeled TX filter. Then he's asked the question again as well, looking at the same filter, the same figure, this figure here on yellow 7. And he's discussing the 342 patent claim 18. And he says, the capacitors are located in the TX filter right here. And the district court was right there. He cited that testimony inside of the first passage I referred you to. And this, by the way, the second one is at A10873. The district court referred to that testimony at page 24 of his opinion. He was right there. He heard Dr. Prusnell say they're in the TX filter right there. And that's what he understood. That's why they didn't raise the argument at the J-Mall hearing. They didn't raise the argument in their papers because they knew the district court would shoot it down. He was there. He heard that testimony. And he heard and saw exactly what Dr. Prusnell was pointing to. Now, there was some discussion at trial of exhibit. We've been talking about what originated as the exhibits at 6989 to 6992.1 in the joint appendix, right? Right. These are extractions from those exhibits. There was a discussion of the capacitors at 6992.1, which are downstream from what was otherwise identified as the mixer or the mixer and the TX filter. What role did they serve? They're also part of the TX filter. So the TX filter is implemented with multiple capacitors. They don't just have one capacitor. They have multiple capacitors all in a line. And so what they've done is they're looking at some of them in 6992.1. Those are some of the TX filter capacitors, and so are the ones in 6991, the two capacitors that are shown there. What they've done is they've taken, the first time they've made this argument, they've taken this figure at 6989, and they've said that everything is on page 8 of their brief. They say there's this box that says Mixer IQ, and everything in that box is a mixer, and that's what Dr. Prusnell was referring to as mixer. But we know from the testimony we just saw that wasn't what he was referring to. Well, that's one piece of testimony. But I believe, if my recollection serves me, that in other places he did say that the capacitors that show up on 6991, just to the right of the BPOP and BPOM, are part of the mixer box. Well, so… Is my recollection correct on that? The box, the box that we have at 6989, that box includes the TX filter and the mixers. So if you look at that, the actual native drawing that you'll have in the appendix, 6989, that whole drawing, there's no TX filter there because that box includes both the TX filter and the mixers. Now, he, well, go ahead. So anyway, then in his testimony, he repeatedly refers to the capacitors as being part of the TX filter. That's what the district court acknowledged. And then in his testimony he says, the down-converted signal is created before the baseband hits the TX filter. And this whole argument about, are these capacitors really something we can call a mixer or not, is in some ways a red herring because Dr. Pushnal agreed that the lower frequency baseband is created before, this is, quote, before the current has reached the capacitor that we're talking about. This new argument that the capacitors are really somehow in the, quote, mixer is wrong, but it's also a red herring because Dr. Pushnal indicated that the baseband, the lower frequency signal, is created before the current has reached the capacitor we're talking about. And I believe Judge Chen pointed out the figure 6991. It shows high frequency RF going into the circle with the cross. That's a double-balanced mixer. And it's a low frequency BBOP going out. That happens before the current hits the mixer. Now, he does testify at one point, Dr. Pushnal? Dr. Pushnal, yeah. Pushnal, right. He testifies at one point that, and this is at 10947, cited several times in the blue and yellow briefs, that the actual baseband signal on the baseband path is created after the capacitor. He calls it a capacitor resistor. I'm not sure what that means, but presumably he means the capacitor. Now, why is that not evidence that supports the plaintiff's position? I'm glad you brought that up. Because that testimony, we were crossing him, and we were crossing him on his simulations. And you'll recall that his simulations were of the Parker vision design, the Parker vision schematic. And so we were asking him questions about his simulation of the Parker vision design and then comparing it and juxtaposing it with our design and showing how the two are different. If you go through that Q&A, we're asking him about his schematic, and we're asking him to show where it is in his schematic. When you say his schematic, which schematic is that? It's not in the appendix now. It was in appendix K of his report. We cite in our brief ad nauseum that he simulated the Parker vision design, not ours. So you're saying that this is a discussion of the Parker vision device, not the accused device? Yes. That capacitor resistor comment that he makes is a comment describing his simulation of the Parker vision design, not the Qualcomm design. So if you go through the testimony, it's A10944 through 48. In those passages, when he's referring to the capacitor resistor, he's really pointing and looking at the schematic for the Parker vision design that he simulated. District court was there, knew that, saw that. But that was our cross, and that's what we were doing. That's a fundamentally different simulation than one of the Qualcomm design, which he never performed. He never performed a simulation of our double balanced mixers because you know what the result would have been. They even tried to exclude any cross on the simulation. Mr. Teter, do you want to spend a few minutes on your cross appeal validity? Just a few minutes, Your Honor. Yes, thank you. And then I'll save one minute for rebuttal. The disagreement regarding Weisskopf was really over the disagreement between Mr. Weisskopf and Mr. Sorrells about what values work best downstream. Mr. Sorrell thinks it's best to have a low impedance load downstream. Mr. Weisskopf thought it was best to have a high impedance. But that had no real relevance because Mr. Weisskopf discussed both modes in his paper. He discussed both a low impedance load and a high impedance load. He did exactly what Mr. Sorrells did. Well, isn't the bigger point that the claims don't have any limitation relating to discharge, and therefore it doesn't matter what the impedance is because that all relates to discharge. That's exactly correct, and that was our argument below. And that's frankly that and the emails probably. And I'm not sure why the whole issue of whether he was disparaging the low impedance or not is really material if discharge isn't a limitation. It shouldn't have been material, and that's what we argued. And we tried to get the jury and the judge to say, look, whether it discharges or not, it's immaterial to all these claims. The judge understood that, and the judge said, yes, it's immaterial, but they raised the argument anyway on closing, and apparently it resonated with the jurors. But it is an immaterial argument. So that was one argument they made. And the other is just they said, well, it doesn't show generating a baseband using stored energy, but the figures in the text show that. They flat out say it. If we look at figure one and figure five, figure one is for the high impedance, figure five is for the low impedance. It shows generating a baseband. It's right there. That's the generation of the baseband. Now, that's a voltage mode design. Weisskopf and the invention are both voltage mode. So is DeMaul, voltage mode. Our device is current mode. Fundamentally, different kinds of devices. And I'll save my last 20 seconds for everybody. Well, is Weisskopf mixing signals? Weisskopf has a switch with the big storage capacitor behind it, so it's doing the exact same thing. They would call it an energy sampler. It doesn't have the mixer, so it's not doing the kind of double-bouncing thing that we do. Thank you. Thank you, Mr. Tinker. Mr. Gunner has three minutes of rebuttal time. First of all, let me deal with the current voltage issue. Judge Weiss and you asked a lot of questions on that. I cited page A2433, which is a Qualcomm opposition to the Department of Vision and Motion for Summary Judgment. And it says, all invalidity experts identified by the parties agree that the energy stored in the capacitor manifests itself as a voltage. So I submit that the distinction between current mode and voltage mode does not resolve the questions on this appeal. But again, that is in a memorandum in opposition to summary judgment of no invalidity. So it's addressed to the devices, the Parker Vision and Weisskopf devices, as I understand it, not addressing Qualcomm's device. Your Honor, this statement is a general statement. It is not restricted to Weisskopf or anything else. It's a general statement, and I think it's accurate. I think in general, without regard to Weisskopf, all the experts agree that the capacitor manifests itself as a voltage. Well, generally that's what capacitors do, is that they store charge by having differential voltage, as I understand, on either side of the capacitor. But that doesn't tell us anything, I don't think, about what the role of the capacitor in this case, in the accused devices, was vis-à-vis the generation of the baseband signal. That's my problem with using the general statements about what capacitors do. Well, Your Honor, we dealt with the voltage current issue in our briefs, and I think that the parties really focused on the voltage issue. And I submit that the Qualcomm accused products are no different from the patented claims in that sense. I think a voltage is generated, a voltage is measured in the form of energy. Energy is the key focus. The focus really is not so much on current or anything else. It is on energy. Energy is a function of voltage. Energy is also a function of current. And I don't think I can add any more to that. The point was made by Mr. Teeter, that there are no capacitors in the mixer. That is just not so. Dr. Pustinow's testimony is replete with statements that there are capacitors in the mixer. I direct you again to 108-03 and 108-04. And he's asked about, have you already shown us some evidence that the accused products have the means for generating the baseband signal from the integrated energy? And his answer is yes. And that includes all these documents. It includes the oscillators. It includes the switches. It includes the capacitor structures. He refers to 999 and 2 and 00, which are the diagrams at A6989, 6991, 6992. The 1999 is clearly a mixer. That's what his title is. If you go to 6992.1, that's the TX filter. And he goes on and talks about that document. So he's talking about capacitors in every device. And his testimony is substantial testimony. And that testimony supports the notion that the capacitors generate the baseband signal in the mixer. The TX filter capacitors serve two functions. One is for the TX jammer. But Dr. Pustinow said it also serves the function of generating a baseband signal. Dr. Dunner, could you say a few things about validity? What is your best argument? These are broad claims. Our best argument on Weisskopf is that Dr. Weisskopf, Dr. Rezavi did not state, Weisskopf doesn't state whether the amount of energy transferred into the capacitor in the alternative embodiment is distinguished from noise. I don't think that Dr. Rezavi's attempt to take something from the diagram, there wasn't any description in that document. And I would refer you to the 551 patent, page A467, column 63, lines 23 to 26, which states the negligible amounts of energy transferred by the undersampling systems, which is what Weisskopf is disclosing, disclosed in section two may not be sufficient to distinguish received RF signals over noise. Rezavi contradicted his testimony on two different occasions that he gave in his deposition. The jury did not have to accept his testimony on it, and I suggest there's a basic flaw in the Weisskopf evidence. Thank you, Mr. Dunner. Mr. Teeter has a minute on rebuttal from across the field. Thank you, Your Honor. I'll just address real briefly the comments about Weisskopf and distinguishable from noise. The Weisskopf paper itself shows the baseband signal being generated in that voltage mode device. That's what it shows. There's nothing else that needs to be shown. There's no way for them to really argue, well, it's not distinguishable from noise. How can they say that when it's showing that the baseband is, in fact, created in that capacitor? That's what the Weisskopf paper is doing. The Weisskopf paper is down-converting a high-frequency signal to a low-frequency signal using the energy in that capacitor. That's exactly what it's doing, and he says it's actually pretty efficient. We cite those passages in our briefs. This is just really an example of the inconsistency between their infringement and validity-type arguments. So for validity here, Weisskopf flat-out shows you the baseband being generated in that capacitor. They say that's not enough. For infringement, though, they say we don't have to test, we don't have to simulate, we don't have to do anything. All the documents say it's there for a low-pass filter, but we can just say it's not, and that's good enough. It's inconsistent. Claim 27 of the 518 patent does, I guess, have a form of discharge limitation, and therefore the argument that Weisskopf – we can throw away the discharge method of Weisskopf doesn't apply to that claim. Is that right? Which claim was it? 27 of the 518. Yeah, there is one claim. I think that's the one. There's one that relates to DeMauw, and there's another one that has the discharge issue. That's right. There is one claim that has a discharge issue, and then – I think that's the one. Claim 18342 is DeMauw, and on DeMauw, they had no response whatsoever. DeMauw looks exactly like – I think it's figure 16H from the 342 patent. It's dead on. They have no response. Claim 27 of the 518, is that – is your answer to that that the answer that you initially started with on your direct, that there is an alternative embodiment in effect in Weisskopf? That's right. Weisskopf says you can go ahead and use lower impedance at the end, and how does that work? He shows you that. Thank you. Thank you. Mr. Teeter, the case will be taken under revisal.